# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Newport News Division

**KEN SPIRITO,**　　　　　　　　　　　　　　　Civil Action No. 4:18-cv-58

　　　　*Plaintiff,*

　　*v.*

**LISA M. ORTIZ, et al.,**

　　　　*Defendants.*

## REPLY IN SUPPORT OF
## DEFENDANT THE DAILY PRESS, INC.'S
## RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT

　　Defendant, The Daily Press, Inc.[1] ("Daily Press"), by counsel, for its Reply in Support of Rule 12(b)(6) Motion to Dismiss the Complaint filed by Plaintiff Ken Spirito ("Plaintiff" or "Mr. Spirito"), states as follows:

### Introduction

　　When the Daily Press published the articles at issue in this case on June 2nd, 3rd and 4th, it was properly performing its function as a news reporting entity for the public and was reporting on important issues of public concern involving a public body, the Peninsula Airport Commission ("PAC"), and a public figure and public official, the PAC's Executive Director Ken Spirito. The Daily Press' reporting was based entirely on the Virginia Department of Transportation's (VDOT) June 2, 2017 Audit Report, a publicly available document that summarized VDOT's investigation

---

[1] The Complaint incorrectly names "The Daily Press, Inc." as opposed to the correct entity, "The Daily Press, LLC." Nevertheless, the Plaintiff served the correct registered agent and the Daily Press does not dispute that it received sufficient notice of this action. Further, the Daily Press will not object to the Plaintiff filing an amendment to correct this misnomer.

into and its findings regarding the activities of the PAC. In fact, on the cover page of the Daily Press' June 3, 2017 print edition (see Exhibit 3 to the Daily Press' MTD), the Daily Press encourages the public to "Read the Report" for themselves and includes a link to the full VDOT Audit Report.

The VDOT Audit Reports involved important matters of public concern, including the potential misuse of public funds and the destruction of documents by a public official during VDOT's investigation. The Daily Press timely and accurately reported on these issues, using publicly available governmental reports as its factual bases, and its reporting is unquestionably protected by the Fair Report Privilege.

The Daily Press filed this Motion to Dismiss arguing, among other things, that the Daily Press' reporting in this case was protected by the Fair Report Privilege because the reporting was based entirely on the VDOT Audit Report. Any alleged unflattering implications about the Plaintiff arose from the findings in the VDOT Audit Report itself which were reported on by the Daily Press in the article at issue. The very purpose of the Fair Report Privilege is to protect news reporting agencies in just this situation; if a newspaper could not report on the contents of a publicly available governmental report highlighting issues of public concern involving actions of a governmental agency, Peninsula Airport Commission, and its commissioners and executive director, then the First Amendment's guarantee of freedom of the press would be eviscerated and the Fair Report Privilege would have no function.

In an attempt to avoid the reality that the Daily Press did nothing but report on the contents of the publicly available VDOT Audit Report, the Plaintiff's Opposition brief improperly argues that this Court should not to consider the contents of the VDOT Audit Report at the Motion to Dismiss stage. However, the law is well established that this Court can consider documents that

are "official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of [such] documents is not disputed." Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396-97 (4th Cir. 2006) (emphasis added). The VDOT Audit Report is a public record, is referenced in the Complaint, and is expressly cited in the Daily Press' June 3rd Article.

Next, because the Plaintiff knows that the Daily Press did not make any statements in the articles that were not supported by the VDOT Audit Report, Plaintiff now argues that it was not the actual words alone in the Daily Press' articles that created the defamatory implication, but instead it was the way in which the pictures of pages from the 307-page VDOT Audit Report were arranged in the graphics on the cover page of the June 3, 2017 article. (See Ex. 3 to MTD for image). However, the "front-page graphics" of the June 3, 2017 print edition article that Plaintiff complains about (¶¶ 66 and 67) are simply copies of the text messages and other images found in the VDOT Audit Reports. The argument that the graphics create a defamatory implication is without support, and the case law cited by the Plaintiff is distinguishable in an important way – in the cases cited by the Plaintiff, the defendant independently added something to the facts that was not present in the original report or publication. In this case the Daily Press did not add anything extraneous to create a defamatory implication; instead it fairly and accurately reported on the contents of the VDOT Audit report. Thus, the Fair Report Privilege is directly applicable to protect the Daily Press.

Perhaps most importantly, the Plaintiff fails to address the fact that he admits in the Complaint that he shredded PAC documents during an active and ongoing investigation which he claims are "old, duplicate airline presentations." (Compl. ¶ 25.) But these are just the types of documents relevant to the investigation. Certainly, it would be highly relevant for the investigators

3

to review and compare what PAC did to assist People Express with what PAC offered other airlines. And the claim that what Plaintiff shredded were merely duplicates is no justification because it is up to the investigators to determine that. Shredded copies could have handwritten notes or other distinguishing factors which the investigators were deprived of reviewing and comparing when Plaintiff shredded these documents.

For the reasons discussed herein, and in the Daily Press' Opening Memorandum in Support of its Motion to Dismiss (ECF No. 24), the Daily Press asks that this Court grant its Motion to Dismiss and dismiss all claims asserted against the Daily Press.

**I. THIS COURT CAN AND SHOULD CONSIDER THE VDOT REPORT REFERENCED IN THE COMPLAINT AND IN THE DAILY PRESS ARTICLES AT ISSUE**

The Fourth Circuit has made clear that documents attached to the Daily Press' motion to dismiss may be considered without converting a Rule 12(b)(6) motion into one for summary judgment if those documents are "official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of [such] documents is not disputed." Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396-97 (4th Cir. 2006) (emphasis added).

Here, not only is the VDOT Audit Report referenced in the Complaint itself, it is a public record of which this Court can take judicial notice.[2] Moreover, the VDOT Audit Report is expressly referenced and cited with the notation "Read the report" in the Daily Press' June 3, 2017 article. (Ex. 3 to MTD.)

As this Court explained in Gasner v. County of Dinwiddie,162 F.R.D. 280, 282 (E.D. Va. 1995):

---

[2] The VDOT Audit Reports are publicly available at:
http://www.virginiadot.org/newsroom/statewide/airport_commission_review.asp

> [W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment. *See* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil,* § 1837, at 762-63 (2d ed. 1990). **This ruling encompasses not only documents quoted, relied upon, or incorporated by reference in the complaint, but also official public records pertinent to the plaintiffs' claims**. *See Pension Benefit Guar. Corp.,* 998 F.2d at 1197; *Watterson,* 987 F.2d at 3; *Cortec Indus.,* 949 F.2d at 47-48. There is but one limitation: the document must be one of unquestioned authenticity.

Id. (emphasis added). Here, there is no question as to authenticity or that the VDOT Audit Report is a public document of which this Court can take judicial notice. Moreover, the VDOT Audit Report is expressly cited in the June 3rd article at issue.

## II. THE FAIR REPORT PRIVILEGE APPLIES HERE / THERE IS NO ACTIONABLE DEFAMATORY IMPLICATION

The Plaintiff argues that the Fair Report Privilege does not protect the Daily Press here because the Daily Press "abused" the privilege when it did more than simply report the facts by "juxtaposing" images of pages from the VDOT Audit Report on the front page of the June 3, 2017 print edition article. (Plaintiff's Opp. Br. at 21.) According to the Plaintiff's Brief in Opposition, the false implication that arose from the way the pictures were "juxtaposed" or arranged on the front page of the Daily Press' June 3rd newspaper was that the Plaintiff was "destroying evidence to impede a government investigation."

However, the only images displayed on the front page graphic of the Daily Press' June 3, 2017 article, are images of pages found in the VDOT Audit Report. To assist the Court, attached hereto as Exhibit 3, are copies of the pages from the VDOT Audit Report that comprise the graphic on the front page of the Daily Press' June 3, 2017 article.

There is no implication that can be reasonably drawn from the pages chosen or the way the pages were displayed in the graphic that did not already exist in the Audit Report itself. In fact,

directly under the graphics displayed in the June 3rd print edition article, there is a description of the pages displayed and a encouragement for the public to read the full report:

> Read the Report
> Go to **virginiadot.org/newsroom/statewide/airport_commission_review** to read the full Virginia Department of Transportation audit, including the final report and the 237-page chronology of events
>
> **AT LEFT:** The audit's final report includes email and other correspondence from commission members, former airport Executive Director Ken Spirito and others regarding the People Express loan.

(Ex. 3 to MTD).

Moreover, since the documents pictured in the graphic appear in the VDOT Report, they obviously were not shredded.

The weakness of Plaintiff's argument is made clear in the cases he relies upon. Plaintiff cites to Horne v. WTVR to support his position that the Fair Report Privilege will not protect against a defamatory implication where additional facts were "juxtaposed" with facts taken from a public report. 2017 U.S. Dist. LEXIS 53136 (EDVA 2017). However, the facts in Horne are entirely distinguishable from the Daily Press' reporting. In Horne, the plaintiff was hired by the Prince George County School System despite having disclosed on an employment application that she had a prior felony conviction. Id. at 2. When the school board realized later that Horne had a felony conviction, and thus was not eligible to be a school employee, she was fired. Id. The local TV station, WTVR, ran a story about the hiring and firing and implied in a "veiled but pointed way" that Horne committed a crime when she filled out her application because she failed to disclose her felony conviction. Id. at *9 (noting that the segment "ended with the fact that it is a crime to make false representation about criminal convictions when filling out an application"). The district court in Horne denied WTVR's motion for summary judgment, concluding that WTVR could not rely on the Fair Report Privilege because WTVR "did more than simply report

what Browder, as the Superintendent for the School System, said about the hiring process." Id. at *13. Instead, WTVR "juxtaposed what Browder said" with additional reporting throughout the story that implied Horned lied on her employment application. Id. [3]

Unlike in Horne, the Daily Press did not omit facts or statements in the VDOT Audit Report. The Daily Press did exactly what the district court in Horne said WTVR did not do – the Daily Press "simply report[ed] what [the VDOT Audit Report] said." Id. Because there were no facts or images omitted by the Daily Press to "juxtapose," the Horne case is inapplicable, and Plaintiff's argument regarding the June 3rd graphics must fail.

Ramey v. Kingsport Publishing Corp., 905 F. Supp. 355, 357 (W.D.VA 1995), is more analogous to the situation here. In Ramey, a newspaper published a series of articles about a college student and her boyfriend who were indicted for involuntary manslaughter and parental neglect after a deceased newborn was found. Id. at 357. The court found that all of the statements in the articles were "within the scope of Virginia's fair report privilege," were "substantially correct" and were "reasonable inferences" drawn from the affidavit that the Sherriff filed to obtain the search warrant. Id. at 358. The Court noted that "the inference that Ramey . . . [was] suspected of assisting in the delivery of the baby" was quite clear from the Sherriff's affidavit. Id. (noting that anyone could "look at what was in the affidavit" and know that "[Ramey and Campbell] were suspects, or suspected"). Thus, the Ramey court applied the Fair Report Privilege and concluded that the publisher was "immune from liability for [the] articles that accurately describe[d] or summarize[d] the contents of an official statement or report." Id. at 358.

In Alexandria Gazette Corp. v. West, the Supreme Court of Virginia held:

---

[3] At the conclusion of the evidence, the district court granted WTVR's Rule 50(a) motion for a directed verdict. On appeal, the United States Court of Appeals for the Fourth Circuit affirmed the district court's ruling which rendered moot WTVR's cross-appeal of the district court's denial of WTVR's motion for summary judgment on the fair report privilege issue. Horne v. WTVR, LLC, 893 F.3d 201 (2018).

7

> The publication of public records to which everyone has a right of access is privileged, if the publication is a fair and substantially correct statement of the transcript of the record. The incorrectness of the record does not necessarily destroy the privilege, and its status is not changed by falsity of the statement in the record.
>
> * * *
>
> Privilege in reporting a judicial record is not measured by the legal sufficiency of the charges made in the judicial pleadings or the truth of those charges. The privilege consists of making a fair and substantially true account of the particular proceeding or record.

93 S.E.2d at 279 (citations omitted). If the VDOT report defamed the Plaintiff, that does not matter. What is necessary to maintain the Fair Report Privilege is that the reporting by the Daily Press contains a fair, substantially true account of the content of the VDOT Report relied upon, which is exactly what the Daily Press printed. Contrary to what the Plaintiff appears to be arguing, the VDOT Report does not have to be "fair" to the Plaintiff for the Fair Report Privilege to apply. "A publisher is immune from liability for articles that accurately describe or summarize the contents of an official statement or report." Ramey, 905 F.Supp. 355 at 358.

Further, Plaintiff cannot rely on a defamation by implication argument when the Plaintiff has admitted to shredding documents while the VDOT audit and investigation were ongoing. (Compl. ¶¶ 25, 26.) And the Virginia Public Records Act makes clear that no public body or agency shall destroy or discard a public record if there is an audit, investigation or other request for records ongoing or outstanding. Va. Code Ann. § 42.1-86.1.

## III. THE COMPLAINT DOES NOT SUFFICIENTLY ALLEGE ACTUAL MALICE

To apply the Fair Report Privilege, the court need not even consider the Daily Press' state of mind. As long the Daily Press fairly and accurately reported on the contents of the VDOT Audit Reports, the Fair Report Privilege applies and the Court need not assess whether actual malice was sufficiently pled in the Complaint. See Alexandria Gazette Corp. v. West, 198 Va.

154, 160 (1956) (noting that it is the court's duty to determine whether the fair report privilege applies without regard to other factual issues that may later be submitted to the jury).

Nevertheless, the Plaintiff has failed to sufficiently plead New York Times actual malice.[4] Plaintiff does not contest that he is a public official subject to the New York Times actual malice standard. New York Times actual malice requires that the statement be made "with knowledge that it was false or with reckless disregard of whether it was false or not." Shenandoah, 427 S.E.2d at 372 (quoting New York Times Co. v. Sullivan, 376 U.S. at 279-80). "Recklessness" requires, at a minimum, that "a defendant *in fact* entertained serious doubts as to the truth of his publication." St. Amant v. Thompson, 390 U.S. 727, 731 (1968). "This is a stringent standard, one not easily met by plaintiffs, since a defendant's "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish a reckless disregard for the truth." Heishman, Inc, 217 F. Supp. 2d at 695 (quoting Harte-Hanks Comm'ns, 491 U.S.657, 688 (1989) (citing St. Amant v. Thompson, 390 U.S. 727, 731 (1968))).

Plaintiff attempts to distract from these rigorous proof and pleading requirements by arguing that Rule 9(b)'s heightened pleading requirements do not apply to defamation actions in federal court. However, in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court made clear that the plaintiff must provide more than "labels and conclusions and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. While "there is no heightened pleading standard for malice . . . , malice must still be alleged in accordance with Rule 8 – a 'plausible' claim for relief must be articulated." Mayfield v. NASCAR, 674 F.3d 369, 378 (4th Cir. 2012).

---

[4] Of note, the Plaintiff has made clear in his opposition brief that he does not intend to pursue the June 4th editorial statements as independently defamatory, but rather argues they are only relevant as it relates to actual malice. (Plaintiff Opp. Br. at 17.) Thus, if this Court determines that the Fair Report Privilege applies, the claims asserted against the Daily Press can be dismissed in their entirety.

Contrary to Plaintiff's assertion, defamation cases are regularly dismissed where plaintiff fails to plausibly allege actual malice. See e.g., Mayfield, 674 F.3d at 378 (dismissing a defamation claim where the allegations of malice were conclusory and "the allegations simply do not suggest that Appellees knew their statements were false or that they were reckless with respect to their veracity"); Cabello-Rondon v. Dow Jones & Co., 720 F. App'x 87 (2d Cir. 2018) ("[A] public figure plaintiff must plead plausible grounds to infer actual malice by alleging enough facts to raise a reasonable expectation that discovery will reveal evidence of actual malice"); Adelson v. Harris, 973 F. Supp. 2d 467, 503 (S.D.N.Y. 2013) ("[T]he pleading standards under *Iqbal* and *Twombly* require courts to dismiss defamation actions where the allegations in the complaint do not plausibly suggest actual malice"); see also, Potter v. Associated Press, No. 3:15CV38, 2015 WL 4393401, at *9 (E.D. Va. July 15, 2015) (granting a motion to dismiss a claim for punitive damages where "actual malice" was not sufficiently pled).

The Plaintiff cites to Eramo v. Rolling Stone, LLC, 209 F. Supp. 3d 862 (W.D. Va. 2012), as supporting his argument that he has sufficiently pled malice in this case. However, the question in Eramo was not whether malice had been sufficiently pled to survive a 12(b)(6) motion to dismiss, but rather whether the plaintiff had offered sufficient evidence at the summary judgment stage to "support a reasonable jury finding" that the statements were made "with reckless disregard for the truth." Id. at 872. The Eramo court concluded that the plaintiff had offered enough circumstantial evidence to create a genuine issue of material fact on the issue of New York Times actual malice by pointing to the reporter's own notes, which indicated the reporter had "obvious reasons to doubt [Jackie's] veracity." Id. In addition, Eramo is distinguishable because it does not involve the Fair Report Privilege which involves an entirely different analysis of actual malice.

As discussed above, as long as the Daily Press reports a fair and substantially true account of the VDOT Report, it cannot be said to have acted with actual malice.

Even if Eramo could provide guidance here (it does not since it deals with proof issues at the summary judgment stage as opposed to pleading standards in a 12(b)(6) motion), unlike in Eramo, the Plaintiff in this case has not pled any facts to support a conclusion that the Daily Press made the statements at issue with a subjective awareness that the statements were false. Instead, the Complaint simply states that malice exists based on "the facial lack of any factual support for the published allegations . . .". (Compl. ¶ 82.) The Complaint further implies that the Daily Press should have done additional investigation before publishing the contents of the VDOT Audit Reports. (Compl. ¶¶ 75, 76.) However, the law is clear that "a media defendant in a defamation claim subject to the New York Times standard cannot be said to have acted with actual malice on account of its failure to investigate the accuracy of an allegedly defamatory statement before publishing it unless the defendant first 'had a high degree of awareness of [its] probable falsity.'" Jackson v. Hartig, 645 S.E.2d 303, 309 (Va. 2007). It cannot be disputed that the publications at issue in this case were republications of the contents of the VDOT Audit Reports – there are no facts in the Complaint to support any suggestion that the Daily Press had a high degree of awareness of the probable falsity of the VDOT Audit Reports.[5]

Further, the Complaint alleges that Daily Press reporter Peter Dujardin reached out to the Plaintiff months after the articles were published to inquire what documents were shredded. (Compl. ¶ 82.) This allegation directly contradicts any assertion that the Daily Press knew Plaintiff wasn't shredding evidence pertinent to the VDOT investigation at the time of its reporting

---

[5] Even if the Complaint included those allegations, the Fair Report Privilege would still protect the accurate republication of a government audit report. Permitting a plaintiff to sue a media outlet for accurately printing the contents of government reports would eviscerate the First Amendment.

on June 2nd, 3rd and 4th. See Mayfield, 674 F. 3d at 378 (noting that Appellant's allegation that the Appellees followed up on their investigation by reaching out to ask what drugs he had taken undercut any allegations of malice). As discussed above, Plaintiff himself has admitted to shredding documents while the VDOT audit and investigation were ongoing. (Compl. ¶¶ 25, 26.) The documents he shredded are now gone, and the Daily Press was not present at the time he shredded the documents. Thus, it is not possible to say that the Daily Press could have a subjective knowledge of the falsity about the content of something destroyed by the Plaintiff.

Therefore, because the Complaint fails to sufficiently allege facts to support a finding of New York Times actual malice against the Daily Press, the defamation claims against the Daily Press should be dismissed.

## IV. THE EDITORIAL STATEMENTS ARE PROTECTED FACT-BASED OPINION

The Plaintiff has made clear in his opposition brief that he does not intend to pursue the June 4th editorial statements as independently defamatory, but rather argues they are only relevant as it relates to actual malice. (Plaintiff Opp. Br. at 17.) In light of the concession that the June 4th editorial is not independently defamatory, we ask the Court to enter an order dismissing the defamation claim against the Daily Press as it relates to the June 4th editorial article described in paragraphs 71-73 of the Complaint. To the extent necessary, the Daily Press continues to rely on the arguments made in its opening Memorandum in Support of its Motion to Dismiss.[6]

---

[6] The Daily Press acknowledges that the Plaintiff is correct that Virginia Code § 8.01-223.2 was effective as of July 15, 2017 and is not retroactive; thus, the Daily Press withdraws its argument related to the Virginia Anti-SLAPP statute.

## **CONCLUSION**

For the reasons discussed above, and in the Daily Press' Memorandum in Support of its Motion to Dismiss, Defendant The Daily Press Inc., asks for the Complaint to be dismissed as to the claims asserted against The Daily Press, costs incurred herein be awarded.

Dated: August 30, 2018  Respectfully submitted,

/s/ *Hunter W. Sims, Jr.*
Hunter W. Sims, Jr. (VSB 9218)
R. Johan Conrod, Jr. (VSB 46765)
Lauren Tallent Rogers  (VSB 82711)
Kaufman & Canoles, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Phone:  757/624-3000
Fax:     888/360-9092
hwsims@kaufcan.com
rjconrod@kaufcan.com
ltrogers@kaufcan.com
***Counsel for Defendant The Daily Press, Inc.***

**CERTIFICATE OF SERVICE**

I certify that on this 30th day of August 2018, a true copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system which will give notification to:

David L. Littel, Esquire (VSB 37690)
Kellam P. Parks, Esquire (VSB 45735)
PARKS ZEIGLER, PLLC
4768 Euclid Road, Suite 103
Virginia Beach, Virginia 23462
Phone: 757/453-5053
Fax: 757/453-7578
dlittel@pzlaw.com
kparks@pzlaw.com
***Counsel for Plaintiff***

Conrad M. Shumadine, Esquire (VSB No. 4325)
Willcox & Savage, P.C.
Wells Fargo Center
440 Monticello Ave. - Suite 2200
Norfolk, VA 23510-2243
Phone: 757/628-5525
Fax: 757/628-5566
cshumadine@wilsav.com
***Counsel for PAC Defendants***

/s/ *Hunter W. Sims, Jr.*
Hunter W. Sims, Jr. (VSB 9218)
R. Johan Conrod, Jr. (VSB 46765)
Lauren Tallent Rogers (VSB 82711)
Kaufman & Canoles, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Phone: 757/624-3000
Fax: 888/360-9092
hwsims@kaufcan.com
rjconrod@kaufcan.com
ltrogers@kaufcan.com
***Counsel for Defendant The Daily Press, Inc.***