IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**KEN SPIRITO,**

        *Plaintiff,*

  *v.*                                              Civil Action No. 4:18-cv-58

**LISA M. ORTIZ, et al.,**

        *Defendants.*

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH PLAINTIFF'S NOTICE TO TAKE DISCOVERY DEPOSITION OF DAILY PRESS, LLC REPORTER PETER DUJARDIN AND FOR A PROTECTIVE ORDER**

NOW COMES, Peter Dujardin, a reporter for the Daily Press, LLC, pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure, and for his memorandum in support of his motion to quash and for a protective order regarding Plaintiff Ken Spirito's Notice to take his deposition on December 5, 2018[1], states as follows:

I. **BACKGROUND FACTS**

In 2014, the Board of Commissioners of the Peninsula Airport Commission ("PAC"), a political subdivision of the Commonwealth of Virginia, voted to approve a contractual arrangement with People Express Airline to provide air service at Patrick Henry Airport and also voted, in violation of the Constitution of Virginia, to guarantee a loan made by TowneBank to People Express. People Express operated briefly, quickly failed and defaulted on the loan. TowneBank called upon PAC to make good on its guarantee. As a result, PAC paid TowneBank

---

[1] Counsel for the Plaintiff and Mr. Dujardin have agreed to postpone the deposition pending the Court's ruling on this motion.

approximately $4.5 million, using public funds. This transaction did not become publically known until January 2017 because PAC's agreements were authorized in executive sessions of the Board and the public minutes were so vague that it was impossible for the public to have any knowledge of the illegal loan guarantee.

On May 23, 2018, plaintiff, Ken Spirito, filed a Complaint (Doc. 1) in this Court alleging that he was defamed by defendant, the Peninsula Airport Commission by its present or former employees, defendants Lisa M. Ortiz, E. Renee Ford, Wilmer K. Thomas, Jr., and also by PAC Commissioner Sharon P. Scott (collectively the "PAC Defendants"). The allegations of defamation against the PAC Defendants arise from several text and Facebook messages that Spirito, who at the time was the Executive Director of PAC, was shredding documents after an audit investigation by the Virginia Department of Transportation ("VDOT") had recently been initiated. The text and Facebook messages were contained in VDOT's Audit Report (Doc. 24-1), consisting of a Final Report, a Supplemental Report and a Chronology (referred to collectively as the "VDOT Audit Report") which was made public and posted on the VDOT website on June 2, 2017. That same day, the Daily Press published an article online about the VDOT Report and also published a similar article on June 3, 2017 in the print edition of the Daily Press. The Complaint also named the Daily Press, LLC as a defendant. As to the Daily Press, the Complaint raised matters involving the First Amendment, a public figure (Spirito), matters involving a public body (PAC) and matters of public concern (the guarantee by PAC of a loan from TowneBank to People Express in violation of the Constitution of Virginia, followed by PAC's using approximately $4.5 million of public funds to make good on the alleged guarantee.)

In response to the Complaint, all defendants filed motions to dismiss, which the parties briefed and orally argued before the Court.

On November 21, 2018, Senior United States District Judge Henry Coke Morgan, Jr. granted the Motion to Dismiss of the Daily Press, ruling that the Fair Report Privilege protected the Daily Press from the allegations in the Complaint (Doc. 38).

On November 29, 2018, plaintiff's counsel forwarded to counsel for the Daily Press a notice to take Peter Dujardin's deposition, a copy of which is attached hereto, marked **Exhibit A**, and incorporated by reference herein. In compliance with the Local Rules of this Court, plaintiff's counsel and counsel for the Daily Press met and conferred in good faith by telephone on two occasions where plaintiff's desire to take Peter Dujardin's deposition was discussed. Basically, plaintiff's counsel wants to depose Peter Dujardin with respect to an article he wrote and which was published in the Daily Press on October 8, 2017 bearing the headline "Was Shredding Out of the Ordinary?", a copy of which is attached hereto, marked **Exhibit B**, and incorporated by reference herein. Plaintiff's counsel stated that he did not want to inquire about any confidential information, but The Daily Press' position is that, in light of the fact that Mr. Dujardin was never a party, and the Daily Press has been dismissed as a party, and this is a civil case, under the reporters or newsgatherers qualified privilege, the only questions which plaintiff's counsel can ask Peter Dujardin in a deposition would be to establish that he wrote the article, it was published in the Daily Press, and a copy of the article is authentic.[2]

The information in the October 8, 2017 article is fully attributed to the VDOT Report and to various persons, including plaintiff's counsel, who provided information for and are quoted in the article. During the course of his over nine years as Executive Director of the PAC, plaintiff is certainly familiar with the present and former PAC employees identified in the article and is

---

[2] The remaining defendants in the case have stated that they will stipulate to these matters. See e-mail from counsel for the PAC Defendants, attached hereto, marked **Exhibit C**, and incorporated by referenced herein.

obviously familiar with his attorney and with Herbert W. "Bert" Kelly, Jr., the former attorney for PAC, both of whom are quoted in the article. At this point in time, plaintiff most certainly is familiar with Bradley W. Gales, VDOT's Director of Assurance and Compliance, who was the person in charge of the VDOT Audit Report and was also quoted in the article. Plaintiff's counsel can interview or depose these people. He can also pursue the other available discovery under the Federal Rules of Civil Procedure. He should not be permitted to, in effect, use Peter Dujardin as his investigator.

While other depositions are scheduled to be taken by plaintiff's counsel in this case on December 5, 17 and 18, at this point, plaintiff's counsel has not taken any depositions.

II. **ARGUMENT**

    A. **The First Amendment of the United States Constitution and Virginia Law Accord the Daily Press a Qualified Privilege Against Testifying.**

The First Amendment's freedom of press clause guarantees the free flow of information which contributes to the "robust and unfettered debate characteristic of our society." *Stickels v. Gen. Rental Co., Inc.,* 750 F. Supp. 729, 731 (E.D. Va. 1990). Thus, although the First Amendment does not provide the press with an absolute shield from legal process, the press does enjoy a qualified reporter's privilege. *See Branzburg v. Hayes*, 408 U.S. 665 (1972).

The qualified reporter's privilege narrowly limits the circumstances under which a reporter may be required to testify or turn over pertinent materials. The Supreme Court in *Branzburg,* a criminal case, recognized that three tests must be met before a reporter may be compelled to testify and/or present materials collected in a newsgathering capacity:

    (a)    Probable cause to believe that the reporter possesses information specifically relevant to a specific probably violation of law;
    (b)    Information sought cannot be obtained by alternative means, such as from sources other than the reporter; and
    (c)    There is a compelling and overriding interest in the information.

As noted, the holding in *Branzburg* applies to criminal cases. There is a different analysis which is more protective of newsgatherers in civil cases. The Fourth Circuit has recognized the reporter's privilege in civil cases and has required a party seeking disclosure to meet the three-part *Branzburg* test. *LaRouche v. National Broadcasting Co., Inc.*, 780 F.2d 1134 (4th Cir. 1986) (examining "(1) whether the information is relevant, (2) whether the information can be obtained by alternative means, and (3) whether there is a compelling interest in the information"). The Fourth Circuit has emphasized the difference between civil and criminal cases and has noted that in the civil context, "the public interest in effective criminal law enforcement is absent," so the protection for reporters resisting civil discovery is entirely consistent with *Branzburg*. *United States v. Sterling*, 724 F.3d 482, 495 (4th Cir. 2013).

Courts in this district have recognized that the newsgathering reporter's qualified privilege in civil cases applies to both confidential and nonconfidential sources and information since the potential burden on the free flow of information caused by the disclosure of material is the same for both confidential and nonconfidential information. *See, e.g., Church of Scientology Int'l v. Daniels*, 992 F.2d 1329, 1335 (4th Cir. 1993) (affirming the district court's application of the *LaRouche* balancing test even though both the source and the materials were nonconfidential); *Stickels v. General Rental Co., Inc.*, 750 F. Supp. 729, 732 (E.D. Va. 1990) (applying the newsgathering reporter's privilege in the context of non-confidential information); *Federico v. Lincoln Military Hous., LLC*, 2014 U.S. Dist. LEXIS 112393 (E.D. Va. 2014) (same); *Hatfill v. N.Y. Times Co.*, 242 F.R.D. 353, 355 (E.D. Va. 2006) (same)*; See also, Penland v. Long*, 922 F. Supp. 1080, 1084 (W.D.N.C. 1995)*; Livingston v. Kehagias*, No. 5:16-CV-906-BO, 2018 U.S. Dist. LEXIS 39545, at *5 (E.D.N.C. Mar. 9, 2018).

Case law in Virginia and in the Fourth Circuit clearly afford Peter Dujardin the protection of the newsgathering reporter: privilege if he is deposed in this case.

**B.     The Plaintiff Cannot Overcome the Qualified Constitutional Privilege Afforded Dujardin and the Daily Press Under the First Amendment and Virginia Law.**

**1.     The testimony sought from Dujardin and the Daily Press is not directly material or relevant to the claims at issue.**

Under the *LaRouche* test, the first thing this Court must consider is "whether the information is relevant" to the claims at issue. The only claims remaining in this case are defamation claims against the PAC defendants for defamatory statements that were allegedly made in March and April 2017. (Compl. ¶¶ 7, 8, 9-10, 21-23, 27.) (Doc.1). The article written by Dujardin that Plaintiff wishes to question him about was published on October 8, 2017 – **over six months after** the purportedly defamatory statements were made. Thus, no testimony offered by Dujardin could be relevant as to the PAC defendants' state of mind at the time the allegedly defamatory text and Facebook statements were made.

Therefore, the testimony sought from Dujardin is not directly relevant in that it will not help to prove or disprove the existence of the Plaintiff's claim against the PAC defendants – it does not, for example as in *Stickels*, consist of photographs of an accident which form the basis of the dispute. 750 F. Supp. at 732. Further, courts in the Fourth Circuit have rejected the argument that unpublished information sought from reporters is "relevant" because it may be used to impeach the opposing party or its witnesses. *See Livingston*, 2018 U.S. Dist. LEXIS at *5-6. Such "tenuous connection[s] between the information sought and its relevancy to the underlying proceedings falls flat in the face of the First Amendment's protection of the press and the well-established reporter's privilege." *Id.* at *6.

> **2. The Plaintiff has failed to exhaust all alternative, non-media sources from which the information sought could be obtained.**

The Second prong of the *LaRouche* test is whether the testimony or information offered by Dujardin could be obtained by alternative means. It is clear that Plaintiff wants to ask Dujardin who he talked to in preparation for his article, what those sources told him, and what other information Dujardin may have uncovered during his investigation for his October 8, 2017 article. However, the October 8th article identifies the sources Dujardin talked to and includes quotes from some of his interviews. Thus, Plaintiff can depose those persons identified in the published article himself and get any information he wants directly from those sources. Plaintiff has not yet taken any depositions in this case and has made no effort to first seek this information from an alternative non-media source. It is clear, Plaintiff simply wishes to take advantage of the investigative reporting done by the Daily Press and avoid doing his own factual investigation. Because the information is available from other alternate means, compelled disclosure is not warranted. *See Livingston*, 2018 U.S. Dist. LEXIS at *6 (concluding that the information sought from the reporter could be obtained through alternative means and noting that "Defendants have the power to depose the plaintiffs and any witnesses to the events involved in the complaint").

> **3. There is no compelling need for the testimony of Dujardin sufficient to override the newsgatherer's privilege accorded by the Constitution to Dujardin and the Daily Press.**

The final part of the *LaRouche* test is whether the Plaintiff has a compelling interest in the information. *Branzburg* makes clear that the Court must make a case-by-case analysis of the needs of the Plaintiff. Plaintiff has failed to articulate a compelling need to obtain the information from Dujardin in order to prove its defamation case against the PAC defendants.

In *Hatfill v. New York Times Co.*, the Court rejected Plaintiff's attempts to subpoena the notes of a reporter in a defamation case and found that the Plaintiff had "not demonstrated that he

has any compelling need for the information." 242 F.R.D. at 356-57. The *Hatfill* Court concluded that there was a "missing link" between the information sought from the reporter and the evidence plaintiff needed to prove its defamation case. *Id.* In *Hatfill* the Defendant, New York Times Co., was sued for defamation based on articles written by one of its reporters, Mr. Kristof; however, the plaintiff also wanted to subpoena the notes of another New York Times reporter, Mr. Broad. *Id.* at 354. In denying the plaintiff's request for reporter Broad's documents, the *Hatfill* Court explained that the plaintiff "failed to articulate . . . that it reasonably believes [the reporter's] notes contain evidence that [the reporter] shared information with Mr. Kristof relevant to the alleged defamatory statements." *Id.* "Given this missing link" the *Hatfill* Court concluded that the plaintiff "fail[ed] to articulate a compelling need to obtain the information from [the reporter] in order to prove its defamation case based on articles written by Mr. Kristof." *Id.* at 357.

Like in *Hatfill*, Plaintiff has no compelling need for the testimony of Dujardin and the testimony sought is not essential to the case or necessary to prove his defamation claims against the PAC defendants. Moreover, Dujardin's testimony would only be after the fact hearsay someone else told him. See **Exhibit B**, the October 8, 2017 article.

III. **CONCLUSION**

Enforcement of the Notice of Deposition in the instant matter will violate the free press guarantees embodied in the First Amendment of the United States Constitution. Because enforcement of the deposition will abridge fundamental constitutional rights and Virginia law for which no compelling interest to override those rights has been demonstrated, non-party Dujardin respectfully requests that this Court quash the Notice of Deposition issued by Plaintiff.

Dated:  December 3, 2018                         Respectfully submitted,

   /s/ *Hunter W. Sims Jr.*
Hunter W. Sims, Jr. (VSB 9218)
R. Johan Conrod, Jr. (VSB 46765)
Lauren Tallent Rogers  (VSB 82711)
Kaufman & Canoles, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Phone:  757/624-3000
Fax:      888/360-9092
hwsims@kaufcan.com
rjconrod@kaufcan.com
ltrogers@kaufcan.com
*Counsel for Defendant The Daily Press, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on this 3rd day of December 2018, a true copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system which will give notification to:

David L. Littel, Esquire (VSB No. 37690)
Kellam P. Parks (VSB No. 45735)
PARKS ZEIGLER, PLLC
4768 Euclid Road, Suite 103
Virginia Beach, Virginia 23462
Phone:  757/453-5053
Fax:      757/453-7578
dlittel@pzlaw.com
kparks@pzlaw.com
*Counsel for Plaintiff*

Conrad M. Shumadine, Esquire (VSB No. 4325)
Willcox & Savage, P.C.
Wells Fargo Center
440 Monticello Ave. - Suite 2200
Norfolk, VA 23510-2243
Phone: 757/628-5525
Fax:     757/628-5566
cshumadine@wilsav.com
*Counsel for PAC Defendants*

/s/ *Hunter W. Sims Jr.*
Hunter W. Sims, Jr. (VSB 9218)
R. Johan Conrod, Jr. (VSB 46765)
Lauren Tallent Rogers  (VSB 82711)
Kaufman & Canoles, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Phone: 757/624-3000
Fax:     888/360-9092
hwsims@kaufcan.com
rjconrod@kaufcan.com
ltrogers@kaufcan.com
*Counsel for Defendant  The Daily Press, Inc.*

16993653v4